Stacy Tolchin (CA SBN #217431)
*Email: Stacy@Tolchinimmigration.com*
Law Offices of Stacy Tolchin
776 E. Green St., Suite 210
Pasadena, CA 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233

Khaled Alrabe (CA SBN #349899)
*Email: khaled@nipnlg.org*
National Immigration Project of the
  National Lawyers Guild (NIPNLG)
1763 Columbia Road NW, Suite 175 #896645,
Washington, DC 20009
Telephone: (617) 227-9727 x3
Facsimile: (617) 227-5495

Counsel for Plaintiff
(*continued on next page*)

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STUDENT DOE #2,<br><br>    Plaintiff,<br><br>    v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>    Defendants. | Case No. 2:25-cv-02993-SPG-SSC<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Sherilyn Peace Garnett |

Anne Lai (CA SBN #295394)
*Email: alai@law.uci.edu*
UC Irvine School of Law –
    Immigrant Rights Clinic
401 E. Peltason Dr.
Irvine, CA 92697-8000
Telephone: (949) 824-9894
Facsimile: (949) 824-2747

Counsel for Plaintiff

For the reasons explained in the accompanying Memorandum of Points and Authorities, Plaintiff hereby makes this Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and 5 U.S.C. § 705. Plaintiff is an international graduate student whose Student and Exchange Visitor Information Systems (SEVIS) record was abruptly and unlawfully terminated by Defendants. Plaintiff seeks an order: (1) temporarily enjoining Defendants' termination of Plaintiff's SEVIS record and any legal effect of Defendants' termination; (2) prohibiting Defendants from directly or indirectly, by any means whatsoever, implementing, enforcing, or otherwise taking action as a result of their decision to terminate Plaintiff's SEVIS record; (3) permitting Plaintiff to be identified in this action by the pseudonym "Student Doe #2" and requiring materials filed with the Court that contain Plaintiff's name or any identifying information to be redacted and/or filed under seal; (4) prohibiting Defendants' from disclosing information disclosed by Plaintiff about their name and identity except as reasonably necessary for the litigation or from using such information for any purpose outside of this litigation; and (5) enjoining Defendants from arresting and detaining Plaintiff or transferring Plaintiff away from the jurisdiction of this District.

As a result of Defendants' actions, Plaintiff is facing immediate harm to their education, career prospects, financial stability and mental health, along with the very real threat of coerced departure. Expedited relief is necessary to prevent irreparable injury before a hearing on a preliminary injunction may be held.

Plaintiff requests that the Court issue a temporary restraining order and order to show case re: preliminary injunction in the form of the proposed order submitted concurrently with this Application. This Application is based on the Complaint, Memorandum of Points and Authorities, and the declaration and exhibits in support thereof.

This Ex Parte application complies with Local Rule 7-19's requirements. Defendants were advised on April 16, 2025 and April 17, 2025 that Plaintiff would be filing this ex parte application and of the contents of this application. Tolchin Decl. ¶ 3. *See* Local Rule 17-19.1. Attorneys Alec Farrell and Paul Green, counsel for Defendants, confirmed that the motion would be opposed. *Id.* The parties agreed that Defendants would have 48 hours to file a response. On April 20, 2025, Plaintiff's counsel followed up with an e-mail informing Defendants that Plaintiff would be filing their application late in the evening on April 21, 2025, and therefore would agree that Defendants file any response by noon on April 24, 2025. Plaintiff's counsel indicated Plaintiff would file a reply the following day, April 25, 2025.

Counsel for Defendants are as follows:

Alec L. Farrell
Assistant United States Attorney
United States Attorney's Office, Central District of California
300 North Los Angeles Street, Suite 7516
Los Angeles, CA 90012
Tel: (213) 894-5557
Fax: (213) 894-7819
Email: alexander.farrell@usdoj.gov

Paul Green
Assistant United States Attorney
Complex and Defensive Litigation Section
United States Attorney's Office
300 N. Los Angeles St., Ste. 7516, Los Angeles, CA 90012
Office: 213-894-0805
Cell: 213-247-4334
Email: Paul.Green@usdoj.gov

Dated : April 21, 2025               */s/ Stacy Tolchin*
                                      Stacy Tolchin

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND ..........................................................................................2

III.    STANDARD OF REVIEW .........................................................................5

IV.     ARGUMENT ...............................................................................................6

    A.  Plaintiff is Likely to Succeed on the Merits Because the Termination of
their SEVIS Record is Blatantly Unlawful.................................................6

      1. The SEVIS Termination Violates the Administrative Procedure Act as
it was Not in Accordance with Law and Arbitrary and Capricious
(Count 1 and Count 4) ..........................................................................7

      2. The SEVIS Termination Violates the Fifth Amendment's Due Process
Clause (Count 2 and Count 3) .............................................................10

    B.  Plaintiff Will Suffer Irreparable Harm and the Equities Tip in Plaintiff's
Favor.........................................................................................................12

    C.  No Bond Is Necessary ...............................................................................14

    D.  The Court Should Permit Plaintiff to Proceed Under Pseudonym in this
Action and Enter Additional Protective Measures ...................................14

      1. Protective Measures Are Needed to Preserve Plaintiff's Right of
Access to the Court..............................................................................15

      2. Anonymity and a Protective Order/Order Not to Detain Are
Reasonable Under the Circumstances, Will Not Prejudice Defendants,
and in the Public Interest ....................................................................18

IV.     CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*ACLU of Nevada v. Masto*,
  No. 08-cv-00822-JCM-PAL, 2008 WL 3874263 (Aug. 18, 2008) .................... 20

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................... 6

*Alvarez v. The Hyatt Regency Long Beach*,
  No. CV 09-04791-GAF VBKX, 2010 WL 9505289 (C.D. Cal. Sept. 21, 2010) 20

*Arizona Student Doe #2 v. Trump*,
  No. 25-cv-00175-TUC-AMM (D. Ariz. Apr. 15, 2025) ................................. 7, 10

*ASSE Int'l, Inc. v. Kerry*,
  803 F.3d 1059 (9th Cir. 2015) ................................................................... 12

*Balance Studio, Inc. v. Cybernet Entm't*,
  LLC, 204 F. Supp. 3d 1098 (N.D. Cal. 2016) .................................... 8, 15

*BE & K Const. Co. v. N.L.R.B.*,
  536 U.S. 516 (2002) .............................................................................. 18

*Borough of Duryea, Pa. v. Guarnieri*,
  564 U.S. 379 (2011) .............................................................................. 18

*Brown v. Holder*,
  763 F.3d 1141 (9th Cir. 2014) ................................................................. 12

*Burlington Truck Lines v. United States*,
  371 U.S. 156 (1962) .............................................................................. 10

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ................................................................... 6

*Ching v. Mayorkas*,
  725 F.3d 1149 (9th Cir. 2013) .......................................................... 11, 12

*City & County of San Francisco v. USCIS*,
  944 F.3d 773 (9th Cir. 2019) ................................................................... 6

*Doe v. Noem*,
  No. 2:25-cv-633 (W.D. Wash. Apr. 17, 2025) ................................................. 7, 10

*Doe v. Penzato*,
  No. CV10-5154 MEJ, 2011 WL 1833007 (N.D. Cal. May 13, 2011) ............... 15

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) ..................................................................... passim

*E.W. v. N.Y. Blood. Ctr.*,
  213 F.R.D. 108 (E.D.N.Y. 2003) .................................................................. 19, 21

*Enters. Int'l, Inc. v. Pasaban*, S.A., No. 3:11-CV-05919-RBL, 2012 WL 5269375
  (W.D. Wash. Oct. 24, 2012) .............................................................................. 20

*Fraihat v. U.S. Immigr. & Customs Enf't*,
  16 F.4th 613 (9th Cir. 2021) ................................................................................ 6

*Frontline Med. Assoc., Inc. v. Coventry Healthcare Workers Compensation, Inc.*,
  620 F. Supp. 2d 1109 (C.D. Cal. 2009) ............................................................... 5

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ............................................................................. 5

*Guilford College, et al. v. McAleenan, et al.*,
  No. 1:18-cv-00891 (M.D.N.C. Oct. 23, 2018) ..................................................... 8

*Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*,
  524 F. Supp. 2d 5 (D.D.C. 2007) ......................................................................... 6

*Jie Fang v. Dir. United States Immigr. & Customs Enf't*,
  935 F.3d 172 (3d Cir. 2019) ........................................................................... 9, 10

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ........................................................................... 14

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ............................................................................. 14

*Keyishian v. Bd. of Regents of Univ. of State of N. Y.*,
  385 U.S. 589 (1967) ............................................................................................. 5

v

*Liu v. Noem*,
    No. 25-cv-133-SE (D.N.H. Apr. 10, 2025) ............................................................ 7

*Lujan v. United States Dep't of Educ.*,
    664 F. Supp. 3d 701 (W.D. Tex. 2023) ............................................................ 13

*Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*,
    No. 24 C 1698, 2025 WL 96482 (N.D. Ill. Jan. 14, 2025) .......................... 12

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ............................................................ 12

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ............................................................ 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ............................................................ 10

*Nader v. Democratic Nat'l Comm.*,
    567 F.3d 692 (D.C. Cir. 2009) ............................................................ 18

*Nat'l Ass'n of Home Builders v. Norton*,
    340 F.3d 835 (9th Cir. 2003) ............................................................ 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................ 6

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
    No. CV092059CASAGRX, 2009 WL 10698442 (C.D. Cal. Dec. 10, 2009) ..... 20

*Rivera v. NIBCO Corp.*,
    364 F.3d 1057 (9th Cir. 2004) ............................................................ 22

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ............................................................ 12

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000) ............................................................ 15

*Schroeder v. McDonald*,
    55 F.3d 454 (9th Cir. 1995) ............................................................ 19

*Tanner Motor Livery, Ltd. v. Avis*, Inc.,
   316 F.2d 804 (9th Cir. 1963) ................................................................ 5

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) .......................................................................... 11

*U.S. Philips Corp. v. KBC Bank N.V.*,
   590 F.3d 1091 (9th Cir. 2010) ............................................................. 5

*U.S. v. Doe*,
   655 F.2d 920 (9th Cir. 1981) .............................................................. 15

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ............................................................ 14

*Wallace v. Christensen*,
   802 F.2d 1539 (9th Cir. 1986) ............................................................ 10

*Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*,
   24 F.3d 56 (9th Cir. 1994) ................................................................. 11

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 6

*Wu v. Lyons*,
   No. 25-cv-01979-NCM (E.D.N.Y. Apr. 11, 2025) ................................... 7

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) .......................................................................... 21

**ADMINISTRATIVE DECISIONS**

*In Re: Enrique Ganesh Doreste Kathiravetpillai*,
   2010 WL 2390757 (BIA May 27, 2010) ................................................ 8

*In Re: Myoung Sook Park*,
   AXXX XX2 580, 2017 WL 1330106 (BIA Mar. 8, 2017) .......................... 8

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ................................................................................................ 18
U.S. Const. amend. V. .............................................................................................. 11

## STATUTES

5 U.S.C. § 705 ........................................................................................................... 6
5 U.S.C. § 706(2)(B) ............................................................................................... 12
8 U.S.C. § 1101(a)(15)(F)(i) ..................................................................................... 7
8 U.S.C. § 1182(d)(3) ................................................................................................ 9
8 U.S.C. § 1182(d)(4) ................................................................................................ 9

## FEDERAL RULES

Fed. R. Civ. P. 5.2(e) .............................................................................................. 19
Fed. R. Civ. P. 65(b)(1)(A) ....................................................................................... 5

## FEDERAL REGULATIONS

8 C.F.R. § 214.1(d) .................................................................................................... 9
8 C.F.R. § 214.1(e) .................................................................................................... 9
8 C.F.R. § 214.1(f) ..................................................................................................... 9
8 C.F.R. § 214.1(g) .................................................................................................... 9
8 C.F.R. § 214.2(f) .................................................................................................. 7, 9
8 C.F.R. § 214.2(f)(1)(iii) .......................................................................................... 8
8 C.F.R. § 214.2(f)(10)(i) .......................................................................................... 8
8 C.F.R. § 214.2(f)(10)(ii) ......................................................................................... 8
8 C.F.R. § 214.2(f)(11)(i)-(ii) .................................................................................... 8
8 C.F.R. § 214.2(f)(16)(ii) ......................................................................................... 9
8 C.F.R. § 214.2(f)(5)(i) ......................................................................................... 8, 9
8 C.F.R. § 214.2(f)(8)(ii) ........................................................................................... 8

## OTHER AUTHORITIES

Andrew Kreighbaum, *Lawsuits Over Foreign Students' Status Find Solid Legal Footing*, BLOOMBERG LAW (April 15, 2025), https://news.bloomberglaw.com/daily-labor-report/lawsuits-over-foreign-students-status-find-solid-legal-footing. ................................................. 1

Benjamin Leynse and Avery Wang, *A Pro-Palestinian Activist Lost His Case, but the "Fight From Below" Continues*, THE NATION (Apr. 7, 2025), https://www.thenation.com/article/activism/momodou-taal-palestine-cornell-university-trump-lawsuit/ ...................................................................... 16

Dalia Faheid & Gloria Pazmino, *A PhD Student Was Snatched by Masked Officers in Broad Daylight*, CNN (Mar. 29, 2025), https://www.cnn.com/2025/03/29/us/rumeysa-ozturk-tufts-university-arrest-saturday/index.html ........................................................................................ 17

Dep't of Homeland Sec., Study in the States, Termination Reasons, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last visited Apr. 18, 2025) ........................... 4

Dep't of Homeland Sec., Study in the States, Termination Reasons, https://web.archive.org/web/20250408211432/https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (archived Apr. 8, 2025) ........................................................................................ 4

DHS, Terminate a Student (last updated Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student. ...................................................................... 13

Eduardo Medina and Anemona Hartocollis, ICE Agents Detain University of Alabama Doctoral Student (Mar. 26, 2025), https://www.nytimes.com/2025/03/26/us/ice-detains-doctoral-student-university-alabama.html ............................................................................................................ 17

Eliza Shapiro, *Immigration Authorities Arrest Pro-Palestinian Activist at Columbia*, N.Y. TIMES (Mar. 9, 2025), https://www.nytimes.com/2025/03/09/nyregion/ice-arrests-palestinian-activist-columbia-protests.html ...................................................................................... 17

Helen Rummel, *International ASU Student Detained After Visa Revoked* (Apr. 4, 2025), https://www.azcentral.com/story/news/local/arizona-education/2025/04/04/arizona-state-university-student-detained-after-visa-revocation/82793138007/ ...................................................................................... 17

Jaclyn Diaz & Adrian Florido, *Why Is Trump Sending Immigrant University Students to Louisiana and Texas?*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-5351645/ice-detention-louisiana-university-scholars ................................................................................................ 18

Jaclyn Diaz, *What We Know About the Case of Detained Georgetown Professor Badar Khan Suri*, NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336173/immigration-georgetown-university-professor .................................... 17

Kate Selig and Halina Bennet, *The Trump Administration Revoked 800 Student Visas. Here Is What We Know*, N.Y. TIMES (Apr. 11, 2025), https://www.nytimes.com/2025/03/27/us/students-trump-ice-detention.html .... 18

Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), https://x.com/Sec_Noem/status/1900562928849326488 ................................... 16

Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. TIMES (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html. ................................................................................................ 16

Madeline Halpert, *Marco Rubio Says US Revoked At Least 300 Foreign Students' Visas*, BBC (Mar. 27, 2025), https://www.bbc.com/news/articles/c75720q9d7lo ................................................................................................................ 17

Michael S. Schmidt, *In Trump's Second Term, Retribution Comes in Many Forms*, N.Y. Times (Apr. 7, 2025), https://www.nytimes.com/2025/04/07/us/politics/trump-biden-law-firms-revenge.html ............................................................................................ 16

Stephanie Saul, *A Mysterious Group Says Its Mission Is to Expose Antisemetic Students*, N.Y. TIMES (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/israel-gaza-student-protests-canary-mission.html .......................................................................................... 18

Tesfaye Negussie and Nadine El-Bawab, *Doxxing Campaign Against Pro-Palestinian College Students Ramps Up*, ABC NEWS (Oct. 20, 2023), https://abcnews.go.com/International/doxxing-campaign-pro-palestinian-college-students-ramps/story?id=104141630 .................................................. 18

U.S. Citizenship & Immigr. Servs., Unlawful Presence and Inadmissibility, https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (last visited Apr. 18, 2025) ..... 8

*University of Minnesota Student Who Was Detained by ICE Sues for Immediate Release*, Associated Press (Apr. 2, 2025), https://www.cnn.com/2025/04/02/us/university-of-minnesota-graduate-student-detained-ice-lawsuit/index.html ........................................................... 17

## I.    INTRODUCTION

Each year, more than a million students from across the world study at U.S. colleges and universities. They come from diverse corners of the world, often at great personal sacrifice on the part of family members and loved ones, enriching classrooms across the country and contributing to fields ranging from the social sciences and the humanities to STEM. Plaintiff is one of the many students who have been studying in the United Staes, making steady academic progress. However, several weeks ago, Plaintiff's world came to a halt. Defendants illegally terminated Plaintiff's Student and Exchange Visitor Information Systems (SEVIS) record, effectively ending their student status in the United States, as part of broader plan to convince thousands of international students who did nothing to violate the terms of their status to prematurely abandon their studies or post-graduate training and "self-deport."

Defendants' brazen attack on international students started with highly publicized arrests of students who engaged in political protest or expressed views that the administration dislikes. However, Defendants' actions did not stop there. In recent weeks, Defendants have abruptly terminated the SEVIS records of over four thousand students,[1] many of which had not participated in any political activity to speak of. Instead, those students, including Plaintiff, have had minor brushes with law enforcement, prompting the administration to arbitrary decide, contrary to statutory and regulatory authority, that they should no longer be able to remain in the United States.

Plaintiff's future now hangs in the balance due to Defendants' irresponsible actions. Plaintiff faces irreparable harm in the form of damage to their academic

---

[1] *See* Andrew Kreighbaum, *Lawsuits Over Foreign Students' Status Find Solid Legal Footing*, BLOOMBERG LAW (April 15, 2025), https://news.bloomberglaw.com/daily-labor-report/lawsuits-over-foreign-students-status-find-solid-legal-footing.

1

plans, future career prospects, and financial stability. Defendants' termination—and the prospect of detention and coerced departure—has also negatively impacted Plaintiff's mental health. Intervention by the Court in the form is necessary to preserve the status quo until Plaintiff can vindicate their rights.

Plaintiff meets all the requirements for a temporary restraining order under Rule 65, or alternatively, a stay under the Administrative Procedure Act (APA) § 705. No authority supports Defendants' unprecedented SEVIS terminations and at least thirteen federal courts have already issued temporary restraining orders in similar cases. Moreover, the balance of hardships tips sharply in Plaintiff's favor, and the public interest is not served by permitting federal agencies to act outside the bounds of law and due process.

Additionally, Plaintiff requests that the Court permit them to proceed under a pseudonym, impose restrictions on the use of Plaintiff's identity or related personal information for any purpose outside this litigation, and prohibit Defendants from detaining Plaintiff or transferring Plaintiff outside the jurisdiction of this District. To be clear, Plaintiff does not intend to withhold their identity from Defendants, only the public. However, protective measures are necessary in light of a well-documented and escalating pattern of retribution against those who challenge the government to ensure that Plaintiff can prosecute this action—and other students can likewise feel safe bringing similar actions—free from retaliation, harassment, and blacklisting.

## II.    BACKGROUND

Plaintiff is an international graduate student approved to attend a doctoral program at a university in Orange County. Declaration of XXX XXX ("Student Doe #2 Decl."), Ex. A to Tolchin Decl., ¶ 2.[2] As part of their program, they serve as

---

[2] Plaintiff submits their declaration in redacted form, but can submit an unredacted version under seal to the Court upon request.

2

a TA. *Id.,* ¶ 3. They have also been approved for one year of OPT. *Id*. Plaintiff brought the instant lawsuit after receiving notification from their school on or about March 25, 2025 that their SEVIS record had suddenly been terminated. *Id*., ¶ 7. The termination was not initiated by the school, but by ICE's Student and Exchange Visitor Program (SEVP). Plaintiff alleged that Defendants' termination of their SEVIS record was without statutory or regulatory authority, in violation of their due process rights, and arbitrary and capricious, and thus subject to review under the APA. Complaint, Dkt. 1, ¶¶ 39-42, 47-54. Plaintiff also brought a claim of violation of due process under the Fifth Amendment to the U.S. Constitution. *Id.*, ¶¶ 43-46.

Plaintiff was given no prior notice as to why their SEVIS record was terminated and they were not provided an opportunity to respond. Student Doe #2 Decl., ¶ 7. This is consistent with a pattern of abrupt SEVIS terminations across the country where student SEVIS records are terminated based on the following reason "OTHER - Individual identified in criminal records check and/or has had their VISA revoked." *See* Tolchin Decl., ¶ 5 & Ex. B, Attachment 1. This "OTHER" notation had never been used before in SEVP initiated terminations in SEVIS. Notably, on or around April 8, 2024, DHS updated webpage discussing SEVIS "Termination Reasons" to include, for the first time, a new "OTHER" category under "SEVP-Only Termination Reasons" described as follows: "[a] SEVIS adjudicator uses this termination reason when no other reasons apply."[3] There is no basis in law for such a termination.

---

[3] *Compare* Dep't of Homeland Sec., Study in the States, *Termination Reasons*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last visited Apr. 18, 2025) *with* Dep't of Homeland Sec., Study in the States, *Termination Reasons*, https://web.archive.org/web/20250408211432/https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (archived Apr. 8, 2025).

Additionally, on March 27, 2025, Plaintiff also received an email from the Department of State informing them that their visa had been revoked. Student Doe #2 Decl., Attachment 1. The email threatened them with removal and stated that "deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States [and that] [p]ersons being deported may be sent to countries other than their countries of origin." *Id.* The email also provided information on how Plaintiff could self-deport. *Id.* Notably, communications from consular offices informing students of visa revocations in the past did not falsely insinuate that a visa revocation effectuated a loss of status or ability to remain in the United States. *See* Tolchin Decl., ¶ 6 & Ex. C, Attachment 1.

Since Plaintiff received notification of the termination of their SEVIS record, they have been experiencing high levels of stress and anxiety. Student Doe #2 Decl., ¶ 13. Without an active SEVIS record, Plaintiff had to stop working. *Id.* Plaintiff feels that the government is attempting to coerce Plaintiff to abandon their studies and leave the country even though Plaintiff has been engaged in a full course of study and not done anything to violate their status. *Id.*, ¶¶ 3, 8-9.

The government has not placed Plaintiff in proceedings nor as of yet attempted to detain Plaintiff. *Id.*, ¶ 10. However, Plaintiff has been following the news and is terrified of being detained by Defendants in retaliation for having filed this lawsuit. *Id.* Plaintiff is also fearful of harassment and blacklisting by third parties. *Id.*, ¶¶ 10-12.

Plaintiff's only criminal history is a misdemeanor DUI. *Id.*, ¶ 4. This offense is not a deportable offense and was fully disclosed to the Department of State during Plaintiff's most recent visa renewal. *Id.*, ¶ 5. As a result, the embassy required medical clearance by a panel physician before issuing a new visa, which

Plaintiff obtained. *Id*. Plaintiff also has a single speeding ticket. *Id*. They have not engaged in any significant political activity. *Id*., ¶ 6.[4]

## III.    STANDARD OF REVIEW

A Temporary Restraining Order ("TRO") may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). A trial court may grant a TRO or a preliminary injunction to "preserve the status quo and the rights of the parties" until a decision can be made in the case. *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). The status quo in this context "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]' " *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis*, Inc., 316 F.2d 804, 809 (9th Cir. 1963). The analysis for a TRO and a preliminary injunction is the same. *Frontline Med. Assoc., Inc. v. Coventry Healthcare Workers Compensation, Inc*., 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009).

To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in their favor, and [4] that an injunction is in the public interest." *City & County of San Francisco v. USCIS*, 944 F.3d 773, 788-89 (9th Cir. 2019)(quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). "Likelihood of success on the merits is the

---

[4] Even if Plaintiff had engaged in political activity, that would not make Defendants' conduct acceptable. *See Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 603 (1967) ("Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned...[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.")

most important factor." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018)
(quotations omitted). If the first two factors are met, the third and fourth factors
merge when the Government is the opposing party. *Nken v. Holder,* 556 U.S. 418,
435 (2009).

Additionally, in the Ninth Circuit, courts also "employ an alternative 'serious
questions' standard, also known as the 'sliding scale' variant of the *Winter*
standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir.
2021) (quotations and citations omitted and alterations accepted). "Under that
formulation, 'serious questions going to the merits' and a balance of hardships that
tips sharply towards the plaintiff[s] can support issuance of a preliminary
injunction, so long as the plaintiff[s] also show[ ] that there is a likelihood of
irreparable injury and that the injunction is in the public interest." *Id.* (quoting *All.
for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)).

In addition, the APA provides that "to the extent necessary to prevent
irreparable injury," the Court may issue "all necessary and appropriate process . . .
to preserve status or rights pending" these proceedings. 5 U.S.C. § 705. The
standard used by courts for a request to stay agency action "is the same legal
standard as that used in a motion for preliminary injunction." *Hill Dermaceuticals,
Inc. v. U.S. Food & Drug Admin.*, 524 F. Supp. 2d 5, 8 (D.D.C. 2007); *Nken*, 556
U.S. at 428 (describing a stay as "halting or postponing" operation of an action or
"temporarily divesting an order of enforceability").

Plaintiff meets all the requirements for relief.

## IV.    ARGUMENT

### A. Plaintiff is Likely to Succeed on the Merits Because the Termination of their SEVIS Record is Blatantly Unlawful

Plaintiff meets both the *Winter* and *Cottrell* standards because ICE's
termination of their SEVIS record was not in accordance with law, violated the

requirements of procedural due process, and was arbitrary and capricious. Not only are there serious questions going to the merits, but it's clear that Plaintiff is likely to succeed. In fact, at least thirteen district courts across the country have already granted Temporary Restraining Orders finding a likelihood of success on the merits in substantially identical challenges to SEVIS terminations. *See*, *e.g.*, *Liu v. Noem*, No. 25-cv-133-SE (D.N.H. Apr. 10, 2025); *Wu v. Lyons*, No. 25-cv-01979-NCM (E.D.N.Y. Apr. 11, 2025); *Arizona Student Doe #2 v. Trump*, No. 25-cv-00175-TUC-AMM (D. Ariz. Apr. 15, 2025); *Doe v. Noem*, No. 2:25-cv-633 (W.D. Wash. Apr. 17, 2025).[5]

### 1. The SEVIS Termination Violates the Administrative Procedure Act as it was Not in Accordance with Law and Arbitrary and Capricious (Count 1 and Count 4)

The termination of Plaintiff's SEVIS record effectively ended Plaintiff's international student status in the United States. It was done without basis in law and arbitrary and capricious.

An F-1 student visa allows an international student to enter the United States. This visa controls a student's admission into the country, not their continued stay. Once admitted in F-1 status, a student is granted permission to remain in the United States for the duration of status (D/S), provided they continue to meet the requirements established by 8 C.F.R. § 214.2(f), such as maintaining a full course of study. The regulations implementing 8 U.S.C. § 1101(a)(15)(F)(i) (defining student visas) define D/S "as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students." 8 C.F.R. § 214.2(f)(5)(i).

An international student who has completed study may be eligible for Optional Practical Training ("OPT") or Curricular Practical Training ("CPT"), which allows a student to engage in employment during and/or after completing a

---

[5] All thirteen orders are included at Tolchin Decl., ¶ 7 & Ex. D.

course of study at a U.S. educational institution. *See* 8 C.F.R. § 214.2(f)(10)(ii). Students may also be employed by their education institutions directly, for example as teaching assistants. SEVIS enrollment and a valid I-20, "Certificate of Eligibility for Nonimmigrant Student Status," which is issued by an SEVP-certified school through SEVIS, are required in order for employment to be authorized. 8 C.F.R. §§ 214.2(f)(1)(iii), (f)(10)(i), (11)(i)-(ii). An I-20 is also necessary for school transfer. 8 C.F.R. § 214.2(f)(8)(ii).

The SEVIS record is not merely a passive tracking tool; rather, it is the operational mechanism through which student status is actively managed and validated. A student with a terminated SEVIS record has no valid Form I-20. Termination renders them ineligible to work, ineligible to request a reduced courseload, and ineligible to transfer schools or change status.[6] DHS's practice and regulations have consistently affirmed that a terminated SEVIS record equates to terminated student status. For example, DHS commonly points to the termination of SEVIS status in Immigration Court as evidence that a student is in violation of their student status and is therefore removable. *See, e.g.*, *In Re: Myoung Sook Park*, AXXX XX2 580, 2017 WL 1330106 (BIA Mar. 8, 2017); *In Re: Enrique Ganesh Doreste Kathiravetpillai*, 2010 WL 2390757 (BIA May 27, 2010). Additionally, when a student seeks reinstatement of student status after falling out, USCIS "will update SEVIS to reflect USCIS's decision." 8 C.F.R. § 214.2(f)(16)(ii).

A student "fails to maintain status" if they are no longer in compliance with the requirements of 8 C.F.R. § 214.2(f) such as when they are no longer "making normal progress toward completing a course of study." 8 C.F.R. § 214.2(f)(5)(i).

---

[6] DHS may even take the position that SEVIS termination starts the accrual of unlawful presence. U.S. Citizenship & Immigr. Servs., Unlawful Presence and Inadmissibility, https://www.uscis.gov/laws-and-policy/other-resources/unlawful-presence-and-inadmissibility (last visited Apr. 18, 2025). *But see Guilford College, et al. v. McAleenan, et al.*, No. 1:18-cv-00891 (M.D.N.C. Oct. 23, 2018)

*See also* 214.2(f)(6)(iii). Additionally, any noncitizen admitted under a nonimmigrant visa category, including students, also falls out of status if they engage in unauthorized employment, provide false information to DHS, or are convicted of a crime of violence with a potential sentence of more than a year. *See* 8 C.F.R. §§ 214.1(e)–(g). A student's status can only end in two circumstances: if they "fail to maintain status" as specified in the regulations, 8 C.F.R. §§ 214.2(f), 214.1(e)–(g), or (2) DHS terminates their status under the conditions described in 8 C.F.R. § 214.1(d). None of these circumstances apply to Plaintiff.

At the time of their SEVIS termination, Plaintiff was a full-time student making normal progress towards their degree. Student Doe #2 Decl., ¶ 3.  Plaintiff has not been convicted of any crime of violence, let alone one with a potential sentence of more than a year. *Id*., ¶¶ 4-5.

DHS also has no authority to terminate Plaintiff's status. DHS may only unilaterally terminate nonimmigrant status in three narrow circumstances: (1) where a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) if a private bill to confer lawful permanent residence is introduced in Congress; or (3) if DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). No other circumstances allow termination. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). This is true even with respect to visa revocations. *See* Tolchin Decl., Ex. E, U.S. Dep't of Homeland Sec., U.S. Immigr. & Customs Enf't, Student & Exch. Visitor Program, *Policy Guidance 1004-04: Visa Revocations* (June 7, 2010)  ("Visa revocation is not, in itself, a cause for termination of the student's SEVIS record."); Ex. F, *U.S. Dep't of State,* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 2, 2016) (student with revoked visa can continue to pursue their course of study, but upon departure, SEVIS record is terminated and the

9

1  student must obtain a new visa from a consulate or embassy abroad before
2  returning to the U.S.).

3       Accordingly, Defendants had no authority to terminate Plaintiff's SEVIS
4  record. Defendants' termination is not in accordance with law under the APA. *See*
5  *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *Wallace*
6  *v. Christensen*, 802 F.2d 1539, 1552 n. 8 (9th Cir. 1986) (holding that an agency "is
7  bound by its own regulations so long as they remain in force.") Additionally,
8  Defendants' termination was arbitrary and capricious because Defendants failed to
9  "articulate a satisfactory explanation for its action including a 'rational connection
10  between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S.,*
11  *Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983), quoting *Burlington*
12  *Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Plaintiff may challenge
13  Defendant's SEVIS termination because it constitutes final agency action for
14  purposes of the APA. *Jie Fang*, 935 F.3d at 182. (finding that a SEVIS termination
15  "marked the consummation of the agency's decisionmaking process, and is
16  therefore a final order").

17       Multiple district courts have already reached the same conclusion in the TRO
18  context. *See*, *e.g.*, *Arizona Student Doe #2 v. Trump*, No. CV-25-00175-TUC-
19  AMM (D. Ariz. Apr. 15, 2025) ("the Government has unlawfully terminated
20  Plaintiff's [SEVIS] record and revoked Plaintiff's F-1 visa in order to arrest, detain,
21  or transfer Plaintiff far from Plaintiff's home, school, employer, and community
22  without any hearing"); *Doe v. Noem*, No. 2:25-cv-633 (W.D. Wash. Apr. 17, 2025)
23  (holding that the "[t]ermination of the SEVIS record because of the DUI arrest is
24  inconsistent with agency regulations, which renders the decision invalid" and that
25  such terminations are arbitrary and capricious). The Court should find that Plaintiff
26  has a likelihood of success on Counts 1 and 4 of Plaintiff's Complaint.

27       **2.  *The SEVIS Termination Violates the Fifth Amendment's Due***
28          ***Process Clause (Count 2 and Count 3)***

The Due Process Clause of the Fifth Amendment requires that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quotations and citations omitted).

Plaintiff has a constitutionally protected property interest continued SEVIS registration. A benefit is a constitutionally protected property interest if it is mandatory in nature. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion"); *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) ("A protected property interest is present where an individual has a reasonable expectation of entitlement…[and] [a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms."). Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued recognition of that status is governed by specific and mandatory rules. DHS has no discretion to terminate a student's SEVIS record or otherwise effectuate an end to a student's status, directly or indirectly, outside of those rules. Courts in this Circuit regularly acknowledge such protected property interests in the context of immigration benefits. *See Ching*, 725 F.3d at 1154-55 (9th Cir. 2013)(recognizing a protected property interest in an I-130 visa petition); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in application for naturalization).

11

Despite this protected interest, Plaintiff received no prior notice from Defendants and no opportunity to review the alleged grounds for termination. *See ASSE Int'l, Inc.*, 803 F.3d, at 1076 ("The fundamental requisite of due process of law is the opportunity to be heard[ ] ... at a meaningful time and in a meaningful manner.") (quotations and citations omitted and alterations accepted). The lack of any procedural safeguards violates the Due Process Clause of the Fifth Amendment and is independently actionable under both constitutional and APA grounds. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); 5 U.S.C. § 706(2)(B).

### B. Plaintiff Will Suffer Irreparable Harm and the Equities Tip in Plaintiff's Favor

The termination of Plaintiff's SEVIS record has left them in legal, academic, and financial limbo. As an initial matter, "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (quoting *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012).

Moreover, beyond the constitutional harm, the unlawful termination of Plaintiff's SEVIS record has threatened their ability to remain in the United States as a doctoral student and barred them from valuable TA work. *See Maria v. Loyola Univ. of Chicago Stritch Sch. of Med.*, No. 24 C 1698, 2025 WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in psychiatry residency is an irreparable harm, though denying injunction on other grounds); *Lujan v. United States Dep't of Educ.*, 664 F. Supp. 3d 701, 721 (W.D. Tex. 2023) (finding that erroneous loss of even one point on Fulbright scholarship application grading would be an irreparable harm, due to loss of opportunity to obtain scholarship).

Because SEVIS status is required to maintain employment authorization, Plaintiff has entirely lost the ability to earn income. Student Doe #2 Decl. Ex. A, ¶13. This has imposed severe financial and emotional hardship. *Id*. Without such

12

income, Plaintiff's living conditions have become precarious. *Id.* The emotional toll on Plaintiff has been profound. *Id*. The uncertainty surrounding their immigration status and future have caused serious mental, emotional, and physical distress. *Id*.

Plaintiff's fear of arrest and detention is not speculative. For students with a terminated SEVIS record, the threat of arrest and detention is real. Indeed, Defendants' intent was for students to fear such a possibility. *See supra* at 4 (describing consular email). On its website, DHS states that when a SEVIS record is terminated, "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student."[7] Moreover, numerous international students have already been detained. *See infra* at 16-18. Plaintiff's counsel recently learned that at least four international students in Minnesota with no apparent connection to protest activity were detained and placed in removal proceedings after their SEVIS records were terminated. Tolchin Decl., ¶ 10 & Ex. G (Chan Decl.). And a student in Arizona with a SEVIS record termination is also currently detained and in removal proceedings. *Id.*, ¶ 11 & Ex. H (Green Decl.) Plaintiff now faces the same looming risk.

On balance, the equities tip sharply in Plaintiff's favor. While the harms to Plaintiff's academic progress, career, and reputation are immense, the government suffers no hardship from being temporarily restrained from enforcing an *unlawful* SEVIS termination. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available.")

---

[7] DHS, Terminate a Student (last updated Nov. 7, 2024),
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

In sum, because Plaintiff has met all four prongs of the *Winter* test, and independently satisfies the Cottrell "serious questions" alternative, the Court should grant the requested temporary protective order.

## C. No Bond Is Necessary

The Court has discretion to set the amount of security required for a temporary restraining order or preliminary injunction under Rule 65(c), if any. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) Indeed, "'[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely any harm will come to Defendants as a result of a grant of temporary relief and Defendants will incur negligible or zero financial costs. Plaintiff therefore asks the Court to exercise its discretion to waive the bond requirement.

## D. The Court Should Permit Plaintiff to Proceed Under Pseudonym in this Action and Enter Additional Protective Measures

Although Rule 10(a) of the Federal Rules of Civil Procedure generally requires that a complaint include the name of all parties, it is well-established that federal courts have discretion to permit parties to proceed under pseudonyms "when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000) (collecting cases). Parties to litigation may proceed using a pseudonym with leave of the court. *See, e.g.*, *U.S. v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)("Where it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms."); *Balance Studio, Inc. v. Cybernet Entm't*, LLC, 204 F. Supp. 3d 1098, 1100–01 (N.D. Cal. 2016); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011); *Santa Fe Indep. Sch.*

*Dist. v. Doe*, 530 U.S. 290, 294 n.1 (2000) (noting that the district court permitted plaintiffs "to litigate anonymously to protect them from intimidation or harassment").

In this Circuit, courts analyze a request to proceed under a pseudonym or anonymously by analyzing whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068. Relevant factors include "(1) the severity of the threatened harm . . . (2) the reasonableness of the anonymous party's fears . . . and (3) the anonymous party's vulnerability to such retaliation." *Id.* *Advanced Textile* also recognizes that where anonymity is warranted, a court may also issue protective orders to govern the terms of disclosure and use of information about a party's identity pursuant to its inherent powers to manage court proceedings and Federal Rule of Civil Procedure 26(c). 214 F.3d at 1069.

### 1. Protective Measures Are Needed to Preserve Plaintiff's Right of Access to the Court

One of the hallmarks of this administration has been a willingness to exact revenge on the government's foes and perceived foes.[8] Whether it is former government officials, law firms, educational institutions, or others, the administration has not hesitated to use its vast power to compel allegiance or make life difficult for those who are seen as disloyal.

With respect to noncitizen students, the hammer has come down particularly hard. For example, on March 5, 2025, the government informed a graduate student and Fulbright recipient at Columbia University who had participated in protests last

---

[8] *See* Michael S. Schmidt, *In Trump's Second Term, Retribution Comes in Many Forms*, N.Y. TIMES (Apr. 7, 2025), https://www.nytimes.com/2025/04/07/us/politics/trump-biden-law-firms-revenge.html.

year, Ranjani Srinivasan, that her student visa had been revoked.[9] They began

searching for her, eventually raiding her apartment. Fearing for her safety, she left

the United States. Secretary of Homeland Security Kristi Noem then posted on X,

"I'm glad to see one of the Columbia University terrorist sympathizers use the CBP

Home app to self deport."[10] On March 21, 2025, Momodou Taal, a student at

Cornell University who had filed a lawsuit challenging the administration's

crackdown, was asked to surrender to immigration authorities.[11] He eventually self-

deported. On March 25, 2025, six plainclothes federal officers ambushed Rümeysa

Öztürk, a graduate student at Tufts University, outside her home, apparently for co-

authoring an op-ed.[12] At the time, she was not aware that her visa had been

revoked. Additional arrests in recent weeks have taken place in New York,

Washington D.C., Alabama, and other states.[13] Secretary of State Marco Rubio

[9] Luis Ferre-Sadurni & Hamed Aleaziz, *How a Columbia Student Fled to Canada After ICE Came Looking for Her*, N.Y. TIMES (Mar. 15, 2025), https://www.nytimes.com/2025/03/15/nyregion/columbia-student-kristi-noem-video.html.

[10] Kristi Noem, *X* (Mar. 14, 2025, 11:01 a.m.), https://x.com/Sec_Noem/status/1900562928849326488.

[11] Benjamin Leynse and Avery Wang, *A Pro-Palestinian Activist Lost His Case, but the "Fight From Below" Continues*, THE NATION (Apr. 7, 2025), https://www.thenation.com/article/activism/momodou-taal-palestine-cornell-university-trump-lawsuit/.

[12] Dalia Faheid & Gloria Pazmino, *A PhD Student Was Snatched by Masked Officers in Broad Daylight*, CNN (Mar. 29, 2025), https://www.cnn.com/2025/03/29/us/rumeysa-ozturk-tufts-university-arrest-saturday/index.html.

[13] Eliza Shapiro, *Immigration Authorities Arrest Pro-Palestinian Activist at Columbia*, N.Y. TIMES (Mar. 9, 2025), https://www.nytimes.com/2025/03/09/nyregion/ice-arrests-palestinian-activist-columbia-protests.html (arrest of Mahmoud Khalil); Jaclyn Diaz, *What We Know About the Case of Detained Georgetown Professor Badar Khan Suri*, NPR (Mar.

called the international students "lunatics."[14] A number of the students have been

quickly moved across state lines to detention facilities in Louisiana or Texas.[15]

The government's targeting of students has expanded far beyond just those

who have been vocal about Palestine.[16] The government's actions by ICE have

been accompanied, or have sometimes been preceded, by harassment or doxxing of

students by right-wing groups.[17]

---

21, 2025), https://www.npr.org/2025/03/21/nx-s1-5336173/immigration-georgetown-university-professor (arrest of postdoctoral fellow Badar Khan Suri); Eduardo Medina and Anemona Hartocollis, ICE Agents Detain University of Alabama Doctoral Student, N.Y. TIMES (Mar. 26, 2025), https://www.nytimes.com/2025/03/26/us/ice-detains-doctoral-student-university-alabama.html (arrest of doctoral student at U of Alabama); *University of Minnesota Student Who Was Detained by ICE Sues for Immediate Release*, ASSOC. PRESS (Apr. 2, 2025), https://www.cnn.com/2025/04/02/us/university-of-minnesota-graduate-student-detained-ice-lawsuit/index.html (arrest of Doğukan Günaydın); Helen Rummel, *International ASU Student Detained After Visa Revoked*, ARIZ. TIMES (Apr. 4, 2025), https://www.azcentral.com/story/news/local/arizona-education/2025/04/04/arizona-state-university-student-detained-after-visa-revocation/82793138007/ (arrest of student at ASU).

[14] Madeline Halpert, *Marco Rubio Says US Revoked At Least 300 Foreign Students' Visas*, BBC (Mar. 27, 2025), https://www.bbc.com/news/articles/c75720q9d7lo.

[15] Jaclyn Diaz & Adrian Florido, *Why Is Trump Sending Immigrant University Students to Louisiana and Texas?*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-5351645/ice-detention-louisiana-university-scholars.

[16] Kate Selig and Halina Bennet, *The Trump Administration Revoked 800 Student Visas. Here Is What We Know*, N.Y. TIMES (Apr. 11, 2025), https://www.nytimes.com/2025/03/27/us/students-trump-ice-detention.html.

[17] Stephanie Saul, *A Mysterious Group Says Its Mission Is to Expose Antisemetic Students*, N.Y. TIMES (Apr. 1, 2025), https://www.nytimes.com/2025/04/01/us/israel-gaza-student-protests-canary-mission.html; Tesfaye Negussie and Nadine El-Bawab, *Doxxing Campaign Against*

Plaintiff has an inalienable right to "petition the government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has recognized this right "as one of the most precious of the liberties safeguarded by the Bill of Rights[.]" *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002) (internal citation omitted). The Court has repeatedly held that the right of access to the courts can implicate "the protections of the Petition Clause." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).

Here, protective measures are necessary to preserve the right of access to the courts. *Cf. Advanced Textile*, 214 F.3d at 1073 (recognizing that fear of employer reprisals "will frequently chill employees' willingness to challenge employers' violations of their rights"). *See also Borough of Duryea*, 564 U.S. at 387 (holding that retaliation by government employee can violate the Petition clause); *see also Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009) ("[W]hen a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith."); *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (holding that the government cannot transfer a prisoner from one correctional institution to another in order to punish the prisoner for exercising his First Amendment right to pursue litigation). This constitutes an independent basis (in addition to preserving the status quo) for the Court to enter an order prohibiting detention.

### 2. *Anonymity and a Protective Order/Order Not to Detain Are Reasonable Under the Circumstances, Will Not Prejudice Defendants, and in the Public Interest*

As noted above, due to the controversial political nature of student visa revocations, Plaintiff fears possible harassment and blacklisting by third parties if

---

*Pro-Palestinian College Students Ramps Up*, ABC News (Oct. 20, 2023), https://abcnews.go.com/International/doxxing-campaign-pro-palestinian-college-students-ramps/story?id=104141630.

they were to be identified as a student whose SEVIS was terminated and sued the government. Student Doe #2 Decl., ¶¶ 11-12. Such threatened harm would be severe, and Plaintiff's fears are reasonable. This is enough to demonstrate a need for anonymity. *See Advanced Textile*, 214 F.3d at 1068. Moreover, "where the plaintiff attacks governmental activity," the case for proceeding anonymously is particularly strong. *See, e.g.*, *E.W. v. N.Y. Blood. Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). This is because, in such circumstances, the plaintiff "presumably represents a minority interest (and may be subject to stigmatization)[.]" *Id.* In connection with permitting Plaintiff to proceed anonymously in the action, the Court has the power to require that any Party filing materials containing information about Plaintiff's identity redact or file such information under seal. Fed. R. Civ. P. 5.2(e). Such an order would be common sense here.

Plaintiff recognizes the need to provide the government with information about their identity to permit the government to litigate the case, however, due to the very real risk of retaliation by the government, Plaintiff asks that the Court enter an order governing the use of any information Plaintiff discloses and an order enjoining Defendants from detaining Plaintiff while the lawsuit is pending. *See Advanced Textile*, 214 F.3d at 1069 ("In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings . . . and to issue protective orders limiting disclosure of the party's name . . . to preserve the party's anonymity to the greatest extent possible . . . .").

Plaintiff's request that the Court enter a protective order limiting the sharing by Defendants' counsel of any information about Plaintiff's identity or related personal information and restricting its use for any purpose outside of this action is reasonable. Indeed, ICE has previously agreed to such terms for material designated by a party as confidential in stipulated protective orders filed in this District. *See, e.g.*, Tolchin Decl., ¶¶ 12-13 & Exs. I-J. Courts have also imposed similar terms in

19

other cases. *See, e.g.*, *ACLU of Nevada v. Masto*, No. 08-cv-00822-JCM-PAL, 2008 WL 3874263, at \*6 (Aug. 18, 2008) (permitting Doe plaintiffs to proceed under pseudonym, requiring counsel for plaintiffs to disclose the identities of plaintiffs to defendants' counsel, and entering a temporary protective order precluding defendants from disclosing the identities or using the information for any purpose outside the litigation); *Enters. Int'l, Inc. v. Pasaban*, S.A., No. 3:11-CV-05919-RBL, 2012 WL 5269375, at \*2 (W.D. Wash. Oct. 24, 2012); *Alvarez v. The Hyatt Regency Long Beach*, No. CV 09-04791-GAF VBKX, 2010 WL 9505289, at \*3 (C.D. Cal. Sept. 21, 2010); *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, No. CV092059CASAGRX, 2009 WL 10698442 (C.D. Cal. Dec. 10, 2009), at \*4.

Plaintiff's request for an order prohibiting detention and transfer of Plaintiff outside of this District is likewise reasonable under the circumstances. *See* Tolchin Decl., ¶ 14 & Ex. K. Plaintiff has never experienced detention before and the prospect of detention as a response to Plaintiff's participation in this suit is deeply frightening. Student Doe #2 Decl., ¶ 10. Detention following the filing of this suit would not only chill Plaintiff's willingness to go forward (in addition to dramatically impacting Plaintiff's practical ability to proceed in this case), but undoubtedly dissuade numerous other international students from vindicating their rights too.

Granting Plaintiff's requested measures will not prejudice Defendants. First, the lawsuit challenges the legality of Defendants' new policy of SEVIS terminations based on visa revocations and/or minor criminal history or police contact with respect to a large (and growing) group of international students around the country. There are only very specific grounds on which ICE can terminate a SEVIS record. Complaint, Dkt. 1, ¶¶ 13-20. Apart from a discrete set of facts, few if any that are likely to be disputed, the details of Plaintiff's specific situation are of limited relevance. Plaintiff is not challenging the revocation of their visa. *Id.*, ¶ 6.

20

Further, the government has made no indication that it needs to take Plaintiff into custody. Student Doe #2 Decl., ¶ 10. Plaintiff is a college student who poses no flight risk or danger. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). Detention of Plaintiff would serve no legitimate purpose.

Finally, given the circumstances here, anonymity and protection from retaliation *furthers* rather than detracts from the public interest. While the public has an interest in access to court proceedings, the individual identity of Plaintiff is not necessary to facilitate the public's understanding of judicial decision-making or "public scrutiny of the important issues in this case." *Advanced Textile*, 214 F.3d 1072. Moreover, the "public . . . has an interest in seeing this case decided on the merits." *Id.* at 1073; *see also N.Y. Blood. Ctr.*, 213 F.R.D. at 111 (where plaintiff challenges a governmental policy or statute "there is arguably a public interest in a vindication of his rights"). Advancing the public interest thus includes meaningful protection from retaliation. *See Rivera v. NIBCO Corp.*, 364 F.3d 1057, 1064, 1066 (9th Cir. 2004) (granting protective order in recognition of the "harsh[] reality" that defendants had incentive to subject plaintiffs to enforcement action notwithstanding "promise[s] not to [retaliate]" and that unrestricted discovery would "unacceptably burden[] the public interest").

## IV.  CONCLUSION

For the reasons stated above, Plaintiff requests that the Court enter the proposed form of order granting Plaintiff's Application for a Temporary Restraining Order.


Dated: April 21, 2025                          Respectfully Submitted,

21

1    /s/ *Stacy Tolchin*_____
     Stacy Tolchin

2

3    Counsel for Plaintiff

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE UNDER L.R. 11-6.2

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,416 words, which:

_x_ complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [*date*].


Dated: April 21, 2025                    /s/ *Stacy Tolchin*_____
                                          Stacy Tolchin